IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **DENNETTE A. WILLIAMS,** | : | |
| **Plaintiff,** | : | |
| v. | : | No. 5:13-cv-313 (MTT) (CHW) |
| **CAROLYN W. COLVIN,** | : | Social Security Appeal |
| **Acting Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

### REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Dennette A. Williams' application for benefits. Because the ALJ did not clearly articulate "good cause" for discounting the opinion of Dr. Scott Gillogly, a treating physician, it is **RECOMMENDED** that Plaintiff's case be **REMANDED** to the Commissioner for further proceedings.

### BACKGROUND

Plaintiff applied for Title II benefits in April 2009, alleging disability due to "pain and weakness in both arms" and "problems with her low back and [] left knee." (R. 35). Plaintiff's impairments are the result of a number of accidents and also of surgical complications. In 2004, Plaintiff suffered an on-the-job injury to her left knee when she "struck a hard table," thereby tearing her medial meniscus. (R. 247). Plaintiff underwent arthroscopic knee surgery in May 2005, and then again in May 2006, but in August 2006 Plaintiff fell, re-injuring her knee and also injuring her right shoulder and lower back. (R. 34-35, 224, 241, 247). Plaintiff quit her job at Rheem Manufacturing Company in August 2006 due to her injuries, and Plaintiff's alleged

1

disability onset date is August 25, 2006. (R. 14, 247). In March 2009, Plaintiff underwent further arthroscopic surgery on her right shoulder to repair a torn rotator cuff. (R. 228-30).

Plaintiff's application was denied initially and on reconsideration, (R. 55-56), and in January 2012, a reviewing administrative law judge ("ALJ") found Plaintiff "not disabled" within the meaning of the Social Security Act. (R. 12-26). The Appeals Council, after considering "new evidence" submitted by Plaintiff, (R. 465-66), declined to review Plaintiff's case in July 2012. (R. 1-3). Plaintiff now seeks review before this Court pursuant to "sentence four" of 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The courts have a narrow role in reviewing claims brought under the Social Security Act. Judicial review is limited to a determination of whether the Commissioner's decision is supported by "substantial evidence," as well as whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987).

"Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence supports the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Rather, courts may only scrutinize the record to assess the reasonableness of the Commissioner's factual findings. *Id.* Even if the evidence in the record preponderates against the Commissioner's decision, that decision must be affirmed if it is supported by substantial evidence.

The courts review questions of law *de novo*, and the Commissioner's "[f]ailure to apply the correct legal standards or to provide the reviewing court with the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). *But see Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine in the context of a Social Security appeal).

## EVALUATION OF DISABILITY

Persons are "disabled" for the purposes of receiving benefits under the Social Security Act if they are unable to engage in any substantial gainful activity due to a medically-determinable physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

When evaluating a claimant's disability, the Commissioner follows a five-step "sequential evaluation procedure." 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. At step two, the Commissioner considers the medical severity of the claimant's medically-determinable impairments. This step has been described as a "reasonable administrative convenience designed to screen out groundless claims." *Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir. 1987).

At step three, the Commissioner determines whether the severity of the claimant's impairments (i) meet or equal the severity of one or more of the impairments specified in the listing of impairments; and (ii) meet the relevant duration requirement. If so, the sequential evaluation procedure stops and the claimant is declared "disabled." If not, the Commissioner assesses the claimant's residual functional capacity, ("RFC"), which is defined as "the most you

can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The Commissioner then proceeds to step four where, based on her RFC assessment, she evaluates the claimant's ability to return to past relevant work despite his or her medically-determinable impairments. Finally, at step five, the Commissioner determines whether there are a sufficient number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience.

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the five-step sequential evaluation procedure, the reviewing ALJ made the following determinations in Plaintiff's case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 25, 2006, her alleged onset date. (R. 14). At step two, the ALJ found that Plaintiff had the following severe impairments: "status post left knee arthroscopy in 2006; status post right rotator cuff repair in March 2009; and cervical radiculopathy." (R. 14-22). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically exceeding one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22-23). Therefore, the ALJ assessed Plaintiff's RFC and found that she could perform:

> light work as defined in 20 CFR 404.1567(b) except she should never climb ladders, ropes, or scaffolds. She can frequently balance and crouch. She can occasionally climb ropes or stairs, stoop, kneel, and crawl. She should never reach overhead with her bilateral upper extremities, but can occasionally push/pull hand controls. She should avoid concentrated exposure to unprotected heights. Finally, the claimant should be allowed to alternate positions from sitting to standing once every 30 minutes throughout the workday.

(R. 23)

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work. (R. 25). At step five, though, the ALJ determined that Plaintiff could make an adjustment to other work. (R. 25-26). Specifically, the ALJ found that Plaintiff could perform the requirements of representative occupations such as "Office Helper," "Cashier II," and "Routing Clerk." (*Id.*). As a result, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act. (R. 24).

## ANALYSIS OF PLAINTIFF'S CLAIMS

In his unfavorable decision, the ALJ provided a detailed summary of the medical evidence, and particularly of the records from two treating sources: Dr. Scott Gillogly, an orthopedic surgeon who saw Plaintiff from August 2007 to March 2010, (Exs. 2F, 5F), and Dr. Carlos Giron, a "pain management" physician who saw Plaintiff from January 2010 to November 2011, (Exs. 6F, 10F, 16F). In weighing these doctors' opinions, the ALJ assigned "less weight" to certain "Impression" reports completed by Dr. Gillogly from August 2009 to January 2010, (R. 24), and "less weight" to a July 2011 questionnaire completed by Dr. Giron. (R. 24-25).

Plaintiff now argues that the ALJ erred in discounting the opinions of both Dr. Gillogly and Dr. Giron. (Pl.'s Br., Doc. 8, pp. 11-14). Plaintiff also argues that the ALJ and the Appeals Council erred at step two by failing to find that Plaintiff suffered from a "severe" lumbar spine impairment. (Pl.'s Br., Doc. 8, pp. 15-17).

Plaintiff's step-two arguments do not provide grounds for reversal.[1] The Eleventh Circuit has repeatedly indicated that where an ALJ finds *a* "severe" impairment at step-two, the failure

---

[1] As framed by Plaintiff, these arguments are:
  B. The ALJ erred by not concluding that Ms. Williams' lumbar spine problems were a severe impairment; and

5

of the ALJ to find that a different impairment is also "severe" is generally harmless. *See, e.g.*, *Heatley v. Comm'r of Soc. Sec.*, 382 Fed. App'x 823, 825 (11th Cir. 2010) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)) ("the finding of *any* severe impairment whether or not it results from a single severe impairment or a combination of impairments . . . is enough to satisfy step two"). This is because ALJs consider claimants' "entire medical condition" at steps three, four and five of the sequential evaluation procedure. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Because the ALJ in this cause found that Plaintiff suffered from *a* "severe" impairment at step two, and because Plaintiff provided no analysis concerning why the alleged step-two errors were material to the outcome of her case, Plaintiff's step-two arguments are not proper grounds for reversal.

The ALJ's treatment of Dr. Giron's July 2011 questionnaire is also not a proper ground for reversal. Regarding that questionnaire, in which Dr. Giron indicated that Plaintiff could walk only one block; could continuously sit for only one hour and could continuously stand for only 15 minutes; could sit for only "About 4 hours" and could stand/walk for only "About 2 hours" during an eight-hour workday; and needed a job permitting her to shift positions at will from sitting, standing or walking; (R. 338-39); the ALJ clearly stated: "All of these responses are inconsistent with treatment notes and office examinations found in Exhibit 10F and Exhibit 16F." (R. 24-25). The record plainly supports the ALJ's assertion, and Plaintiff's only apparent argument to the contrary—that the ALJ erred by failing to "cite a specific item of evidence," (Pl.'s Br., Doc. 8, p. 12)—is not an accurate statement of the relevant law. *Cf. Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (noting that ALJs must "state specifically the weight accorded each item of evidence and the reasons for [their] decision").

---

C. The Appeals Council committed error by not remanding Ms. Williams' claim based upon new and material evidence submitted to it documenting the severity of Ms. Williams' lumbar spine condition.

(Pl.'s Br., Doc. 8, p. 3)

6

The record does indicate, however, that the ALJ did not "clearly articulate" reasons for giving "less weight" to Dr. Gillogly's opinion. A treating physician's opinions are presumptively entitled to "substantial or considerable weight" *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Although the ALJ articulated a reason for discounting Dr. Gillogly's opinion, the ALJ's reason is a mere conclusory statement that does not allow for meaningful judicial review. *See, e.g., Nyberg v. Comm'r of Soc. Sec.*, 179 Fed. App'x 589, 592 (11th Cir. 2006). It is for this reason that Plaintiff's case must be remanded.

Dr. Scott Gillogly, an orthopedic surgeon, treated Plaintiff consistently and extensively between 2007 and 2010. He is the treating source responsible for performing surgery on Plaintiff's right shoulder in March 2009, (R. 230). He performed or reviewed numerous diagnostic procedures, including MRIs, referred Plaintiff to other specialists, and supervised her treatment and physical therapy. In his "Impression" reports, which date from August 2009 to January 2010, Dr. Gillogly found that Plaintiff:

- "Should not be required to participate in any repetitious lift, push, or pull activities even below the waist;" and

- "Should not be required to climb, crawl, squat, stoop, kneel or work around unprotected heights or operate heavy equipment."

(R. 273, 275-76)

Despite this extensive record of treatment, the ALJ simply dismissed Dr. Gillogly's findings with a conclusory statement:

> Less weight is given to Dr. Gillogly's opinion that the claimant should avoid any overhead lifting or repetitious pushing or pulling, or that she should not be required to climb, crawl, squat, stoop, or kneel as the medical evidence of record does not support the complete inability to perform these postural activities.

(R. 24)

7

While "good cause" for discounting a treating source's opinion exists when that opinion is "not bolstered by the evidence" or when "the evidence supported a contrary finding," an ALJ's conclusory statements to that effect are not sufficient to satisfy the Eleventh Circuit's "clear articulation" requirement. The reasoning here is simple: judicial review of conclusory statements, like the statement above, would necessarily become "conjecture . . . invad[ing] the province of the ALJ." *Nyberg v. Comm'r of Soc. Sec.*, 179 Fed. App'x 589, 592 (11th Cir. 2006); *see also Paltan v. Comm'r of Soc. Sec.*, 2008 WL 1848342 (M.D. Fla. April 2008) ("The ALJ's failure to explain how [a treating physician's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required").

Additionally, it is not at all clear that Dr. Gillogly's opinion is so consistent with the ALJ's RFC findings that this Court may disregard the ALJ's error as "harmless." Dr. Gillogly consistently indicated, in August 2009 (R. 276), October 2009 (R. 224-75), and January 2010 (R. 273), that Plaintiff should avoid repetitious pushing and pulling. The ALJ, though, found that Plaintiff could "occasionally push/pull hand controls." (R. 23). *Cf.* 20 C.F.R. § 404.1567(b) ("Light work") ("a job is in this category when it requires . . . some pushing and pulling of arm or leg controls"). Dr. Gillogly also indicated that Plaintiff should not climb, crawl, squat, stoop, or kneel, and that she should avoid unprotected heights and heavy machinery. (R. 273, 75-76). The ALJ, by contrast, found that Plaintiff could "occasionally climb ropes or stairs, stoop, kneel, and crawl," and that she should "avoid *concentrated* exposure to unprotected heights." (R. 23) (emphasis added). Given these inconsistencies, and given the ALJ's failure to articulate clear reasons for discounting Dr. Gillogly's treating-source opinion, this Court must remand Plaintiff's case to the Commissioner.

8

## **CONCLUSION**

After careful consideration of the record, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED**, and that Plaintiff's case be **REMANDED** to the Commissioner for a reevaluation of the records of Dr. Scott Gillogly, Plaintiff's treating physician. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 12th day of August, 2014.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge